**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

W&T TRAVEL SERVICES, LLC,

        Plaintiff,

        v.

PRIORITY ONE SERVICES, INC.,

        Defendant.

Civil Action No. 13-cv-1617 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, W&T Travel Services, LLC, a Maryland company, which provides transportation services to the federal government and commercial companies, filed this action against the defendant, Priority One Services, Inc., a Virginia company, which also provides such services, to bar a second arbitration of a contract dispute that persists between the parties. *See* Compl., ECF No. 1. Pending before the Court is the plaintiff's Motion For Stay of Arbitration Proceeding ("Pl.'s MTS"), ECF No. 7, and the defendant's Motion to Dismiss the Complaint or, in the alternative, to Stay and Compel Arbitration ("Def.'s MTD/Stay"), ECF No. 10. For the foregoing reasons, the plaintiff's motion to stay the arbitration is denied and the defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is granted. [1]

## I.    BACKGROUND

The plaintiff filed this action to enjoin a second arbitration of a contract dispute between the parties "because such action arises under the same facts, agreement, and transaction as the

---

[1] The plaintiff has also filed a Motion to Expedite Ruling on Plaintiff's Motion to Stay Arbitration Proceeding, ECF 21, as well as a Motion for Partial Summary Judgment, ECF 23. Since the Court's ruling on the two other pending motions results in dismissal of the Complaint, the plaintiff's remaining motions to expedite and for partial summary judgment are denied as moot.

first arbitration." Compl. ¶ 1. The facts underlying the contract dispute prompting both arbitrations are summarized in a prior opinion by this Court. *See Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 825 F. Supp. 2d 43, 45 (D.D.C. 2011). In brief, on August 20, 2008, the National Institutes of Health ("NIH") awarded the plaintiff a contract ("the Prime Contract") to operate shuttle buses for NIH employees and patients. *Id.* The Prime Contract provided for one base year of service (2008-2009), and was renewable by NIH for four additional one-year terms (2009-2010; 2010-2011; 2011-2012; and 2012-2013). *See* Compl., Ex. 1 ( "Demand for Arbitration") ¶ 13, ECF 1-1. Over the five years of the Prime Contract, including the four option years, the contract was valued at approximately $34 million. *Priority One Servs., Inc.*, 825 F. Supp. 2d at 45.

One week after award of the Prime Contract, the plaintiff entered a subcontract with the defendant for the defendant to manage the NIH *patient* shuttle bus services while the plaintiff retained responsibility for managing the NIH *employee* shuttle buses. *See* Subcontract Agreement ("Subcontract"), ECF No. 1-1, at 1. Similar to the terms in the Prime Contract, the Subcontract was for one year but would "automatically extend consistent with [NIH's] exercise of [the] four one-year option periods under the Prime Contract." *Id.* at 2. In addition, the Subcontract contained an arbitration clause stating that:

> 12. All claims, disputes and matters in question arising out of, or relating to, this Subcontract Agreement or the breach thereof, except for claims for which the Client is liable (which will be adjudicated in accordance with the prime contract's Dispute clause), shall be decided by arbitration in accordance with the rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The location of the arbitration proceedings shall be Washington, DC.

Subcontract ¶ 12.

2

In 2009, after NIH exercised the first option year on the Prime Contract, the plaintiff terminated the Subcontract with the defendant. *See* Demand for Arbitration ¶¶ 19-23. On December 15, 2009, the defendant filed a demand for arbitration with the American Arbitration Association ("AAA"), arguing that the plaintiff's termination of the Subcontract was a material breach of the parties' agreement. *See id.* ¶ 25. Almost ten months later, on October 18, 2010, the arbitration panel issued its ruling agreeing with the defendant that the plaintiff's termination of the defendant "was unjustified" and awarding the defendant damages for the amount of lost profits for Option Years 1 and 2 in the amount of $1,135,020.00, plus interest, costs and expenses ("2010 Arbitration Award"). Compl. ¶ 7; Demand for Arbitration, ¶¶ 29, 32; *see Priority One Servs., Inc.*, 825 F. Supp. 2d at 48. The 2010 Arbitration Award compensated the defendant for damages incurred for the first two option years of the Subcontract, since, by the time of the arbitration ruling, NIH had exercised the options for those two years under the Prime Contract, and that exercise would have automatically extended the Subcontract, absent the plaintiff's material breach of the Subcontract. *See* Demand for Arbitration ¶¶ 31-32. The arbitration panel did not award the defendant damages for the third and fourth option years because "the AAA found that [the defendant's] claims for those damages had not yet fully accrued because NIH had not yet exercised those option years." *Id.* ¶ 33.

The defendant then petitioned for judicial confirmation of the arbitration award, which the plaintiff opposed. *Priority One Servs., Inc.*, 825 F. Supp. 2d at 48. This Court confirmed the arbitration panel's decision to award the defendant damages that flowed from the plaintiff's wrongful termination of the parties' Subcontract, *see id.* at 57, and that decision was affirmed by the Circuit, *Priority One Servs., Inc. v. W & T Travel Servs.*, LLC, 502 F. App'x 4, 6 (D.C. Cir. 2013).

NIH thereafter exercised option years 3 and 4 in 2011 and 2012, respectively, under the Prime Contract. *See* Demand for Arbitration at ¶¶ 36, 38. Towards the end of the Prime Contract, the plaintiff and the defendant competed for the NIH shuttle bus contract and, in July 2013, the plaintiff was again awarded the prime contract ("2013 Prime Contract"). *Id*. ¶¶ 41-43. On October 9, 2013, the defendant brought a second demand for arbitration for lost profits accruing from option years 3 and 4 under the Prime Contract and Subcontract, as well as lost profits under the 2013 Prime Contract, since the Subcontract provided for automatic extension of its term for any option years under the Prime Contract "along with any further extension or re-competition of the [2008] Prime Contract." *Id*. ¶¶ 36-40. Two days later, the plaintiff filed this action seeking to enjoin the defendant "from proceeding with a second demand for arbitration." Compl. ¶ 1.

As set out in the Complaint, the plaintiff seeks to stop the second arbitration, requesting a declaratory judgment, pursuant to 28 U.S.C. § 2201, that this Court's confirmation of the 2010 Arbitration Award is "the final determination of the issues related to the Subcontract" and bars any re-litigation of issues arising under the Subcontract. Compl. ¶ 2. The plaintiff supports this request with allegations set out in five counts, namely: that no arbitration is authorized because the Subcontract no longer exists or applies, *id.* ¶ 22 ("Count I"); that the defendant's right to recover damages for option years 3 and 4 was already litigated in the first arbitration and, therefore, the second arbitration is barred under the doctrines of collateral estoppel, *id.* ¶¶ 25-26 ("Count II"), and res judicata, *id.* ¶¶ 29-31 ("Count III"); that the defendant waived the claims asserted in the second arbitration "by not making any efforts to preserve them," *id.* ¶ 33 ("Count IV"); and, finally, that the second arbitration demand is "frivolous" and "constitutes harassment

of [plaintiff]," *id.* ¶¶ 37-38 ("Count V"), for which the "Plaintiff reserves the right to seek other monetary damages, depending on the findings of this Court," *id.* ¶ 40.

On November 7, 2013, the AAA determined that "in the absence of an agreement by the parties or a court order staying this matter, [it would] proceed with the administration of the arbitration." Joint Status Report, Ex. 1 (AAA Letter, dated November 7, 2013) at 3, ECF No. 18-1. Following solicitation of briefing from the parties on the threshold issue of arbitrability of the second arbitration demand, the arbitration panel determined, on July 21, 2014, that it has jurisdiction to arbitrate the merits of the claims raised in the demand "as well as scrutinize the defenses to those claims, even if the [plaintiff] decides not to participate in the arbitration." Joint Status Report, Ex. 1 (AAA Panel "Decision on Jurisdiction") at ¶¶ 17- 18, ECF No. 20-1.

The Court now turns to the pending motions by the plaintiff to stay the arbitration and by the defendant to dismiss the Complaint or, alternatively, stay the case and compel arbitration.

## II. LEGAL STANDARD

### A. Motion to Compel or Stay Arbitration

A motion to compel arbitration, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, is treated "as if it were a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate" and, therefore, is subject to the summary judgment standard of Federal Rule of Civil Procedure 56(c). *Aliron Int'l, Inc. v. Cherokee Nation Indust., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (internal quotations and citations omitted). A motion to stay arbitration presents the mirror image of the same question "because the argument that 'no agreement to arbitrate was entered . . . effectively raises the issue whether there was a meeting of the minds on the agreement to arbitrate.'" *Signature Tech. Solutions v. Incapsulate, LLC*, 2014 U.S. Dist. LEXIS 97080, at *3 (D.D.C. July 17, 2014)

(quoting *Booker v. Robert Half Int'l*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004), *aff'd*, 413 F.3d 77

(D.C. Cir. 2005)); *Tower Ins. Co. of N.Y. v. Davis/Gilford*, 967 F. Supp. 2d 72, 76 (D.D.C. 2013)

(same).  Both motions to stay and compel arbitration focus judicial scrutiny on the arbitrability of

the dispute, rather than the dispute itself and, when both motions are made concurrently, they

may be addressed together as cross-motions for summary judgment.  *See Aliron*, 531 F.3d at 865;

*Tower Ins.*, 967 F. Supp. 2d at 77; *see also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir.

2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is

required to determine arbitrability, regardless of whether the relief sought is an order to compel

arbitration or to prevent arbitration.").

　　　　Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law," upon consideration of  "materials in the record" that establish

the absence or presence of a genuine dispute.  FED. R. CIV. P. 56(a), (c).  While the moving party

bears the burden of showing the absence of dispute material facts, "[t]he evidence is to be

viewed in the light most favorable to the nonmoving party and the court must draw all reasonable

inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir.

2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

　　　　Disputes over the application of the law to undisputed facts are particularly amenable to

resolution on summary judgment since such disputes raise only legal questions properly within

the domain of the Court to determine.  *See Tower Ins.*, 967 F. Supp. 2d at 78 (citing *Spark v.

Catholic Univ. of Am.*, 510 F.2d 1277, 1281 (D.C. Cir. 1975)); *see also Henry v. S/S Bermuda

Star*, 863 F.2d 1225, 1229 n.11 (5th Cir. 1989); *Bassis v. Universal Line, S.A.*, 436 F.2d 64, 68

(2d Cir. 1970).  Consequently, "[t]he proper interpretation of an unambiguous contract provision

is a question of law, and thus is well-suited to disposition by summary judgment." *Tower Ins. Co. of N.Y.*, 967 F. Supp. 2d at 78 (citing *United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 456 F. Supp. 2d 46, 55 (D.D.C. 2006), *aff'd*, 530 F.3d 980 (D.C. Cir. 2008)); *see also Noel v. Baskin*, 131 F.2d 231, 233 (D.C. Ct. App. 1942) ("[n]o citation of authority is necessary to establish the proposition that the construction of written instruments is a question of law for the court."); *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 705 (7th Cir. 1995) ("Contract interpretation is particularly suited to disposition by summary judgment.").

**B.  Failure to State a Claim under Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses in original; internal quotations and citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff pleads factual content that is more than "merely consistent with a defendant's liability," but allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief,"

*Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the] claims across the line from conceivable to plausible," *id*. at 570.  Thus, "a pleading [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact.  *Twombly*, 550 U.S. at 555-56; *Sissel v. United States Dep't of Health and Human Servs.*, No. 13-5202, 2014 U.S. App. LEXIS 14397, at *7 (D.C. Cir. 2014) (in considering Rule 12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct") (internal quotations and citations omitted).  In addition, courts may "ordinarily examine" other sources "when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc.*, 551 U.S. 322 (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)); *see also English v. D.C.*, 717 F.3d 968, 971 (D.C. Cir. 2013)**.**

## III.    DISCUSSION

        The defendant aptly observes that the plaintiff's motion to stay and the defendant's motion to dismiss or, in the alternative, compel arbitration "both ask the Court to rule on the identical issue—whether the AAA or the Court has the exclusive power to rule on arbitrability." Def.'s Opp'n Pl.'s Mot. Stay ("Def.'s Opp'n") at 2, ECF No. 1.  The plaintiff contends that arbitrability of the claims set out in the defendant's demand for arbitration is an issue for judicial determination, warranting a stay of the arbitration proceedings.  *See* Compl.  ¶¶ 21-23; Pl.'s Mem. Supp. Mot. Stay ("Pl.'s MTS Mem.") at 7-10.  The defendant counters that the

Subcontract reflects the parties' unequivocal agreement that the arbitrator would rule on the arbitrability of any dispute arising from that Subcontract and, furthermore, that the Complaint should be dismissed. *See* Def.'s Mem. Supp. Mot. Dismiss or Stay ("Def.'s MTD/Stay Mem.") at 9-13. The Court agrees with the defendant, as explained below.

### A. The Competing Motions to Compel or Stay Arbitration

"[A]rbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010). Thus, the Supreme Court has directed that "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*."). In making that determination, the court must apply the "'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].'" *Id.* (quoting *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)). When, as here, "ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." *BG Group PLC v. Republic of Arg.*, 134 S. Ct. 1198, 1206 (2014) (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U. S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.")).

Generally, "courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability,'" including "questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Id.* (quoting *Howsam* v. *Dean*

*Witter Reynolds, Inc.*, 537 U. S. 79, 84 (2002)). In this respect, the plaintiff is correct in stating that "[i]t is a well settled proposition that the question of arbitrability is *undeniably* an issue for judicial determination," Pl.'s MTS Mem. at 3, but this proposition has an important exception that the plaintiff ignores.

The Supreme Court has recognized that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Jackson*, 561 U.S. at 68-69. Such "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. The only caveat is that a heightened standard applies to the determination that the parties agreed to arbitrate arbitrability, requiring "clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal quotations, citations, alterations omitted); *see also AT & T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986) ("[U]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." ); [2] *Skrynnikov v. Fannie Mae*, 943 F. Supp. 2d 172, 175-176 (D.D.C. 2013).

The parties agree that the heightened standard applies here. Def.'s Opp'n at 3; Pl.'s MTS Mem. at 3. Thus, the defendant, as the party moving to compel arbitration on the arbitrability issue, shoulders the burden of proving by "clear and unmistakable evidence" that the parties

---

[2] The plaintiff's reliance on *AT&T Technologies, Inc.*, 475 U.S. 643, for the proposition that the Court must determine arbitrability is misplaced. Although the Supreme Court in that case found that the appellate and district courts erred in authorizing an arbitrator to determine the threshold issue of arbitrability, the basis for this finding was that the parties had not clearly and unmistakably agreed to arbitrate arbitrability. 475 U.S. at 648. Where clear and unmistakable evidence is present that the parties agreed to submit arbitrability to an arbitrator, *AT&T Technologies, Inc.* confirms that the parties' agreement should be enforced.

agreed to submit arbitrability to the arbitrator. *First Options*, 514 U.S. at 944. The defendant has carried this burden.

### 1. *The Subcontract Language Submits Arbitrability to the Arbitrator*

The defendant argues that the issue of arbitrability is for the arbitrator because the Subcontract provides clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See* Def.'s MTD/Stay Mem. at 9-16. The Court agrees.

The defendant points to two provisions in the Subcontract as showing "by clear and unmistakable evidence that the parties agreed to have an arbitrator determine arbitrability." Def.'s MTD/Stay Mem. at 10. First, the defendant cites the language in the arbitration provision of the Subcontract that empowers the AAA to resolve "all claims, disputes and matters in question arising out of, or relating to, this Subcontract." *Id.* at 12. This Court has already concluded that this arbitration clause is "broad." *See Priority One*, 825 F. Supp. 2d at 55 (quoting Subcontract ¶ 12). The broad, all-encompassing language in the arbitration clause is clear evidence that the parties agreed to arbitrate all issues arising under the Subcontract, including the issue of arbitrability. *See Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (finding that party to the contract "cannot now disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability"); *Avue Techn. Corp. v. DCI Grp., L.L.C.*, CIV.A. 06-327 (JDB), 2006 WL 1147662, at *7 (D.D.C. Apr. 28, 2006) (same).

Second, the defendant highlights the Subcontract's requirement that arbitration shall take place pursuant to AAA rules as providing additional "clear and unmistakable evidence that the parties agreed the arbitrator shall decide arbitrability." Def.'s MTD/Stay Mem. at 10. The Subcontract states in relevant part that "[a]ll claims, disputes and matters in question arising out of, or relating to, this Subcontract Agreement or the breach thereof . . . shall be decided by

11

arbitration in accordance with the rules of the [AAA] then in effect unless the parties mutually agree otherwise."  Subcontract ¶ 12.  Under Rule R-7(a) of the AAA's Commercial Arbitration Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *See* Def.'s MTD/Stay Mem. at 3 (quoting AAA Com. Arb. R. ("AAA Rules"), R-7(a), ECF 7-1, Ex. 3.).

While the D.C. Circuit has not addressed the issue, courts both within and outside this jurisdiction have held that an arbitration clause adopting the rules of the AAA makes the issue of arbitrability one for the arbitrator, not the court.  *See, e.g.*, *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 133 (D.D.C. 2013) (finding that "[i]n light of this caselaw . . . there is clear and unmistakable evidence that the parties intended for an arbitrator to decide questions of arbitrability, including challenges to the continued validity and existence of the arbitration provision" where the parties incorporated the rules of the AAA into their arbitration agreement); *Grynberg v. BP P.L.C.*, 585 F. Supp. 2d 50, 54-55 (D.D.C. 2008) (finding that "[a]mple case law supports" the position that "incorporation of the AAA Rules by reference constitutes 'clear and unmistakable evidence' that the parties intended to submit the arbitrability determination to the arbitrator"); *Fallo v. High –Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (finding "that the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator"); *Contec Corp.*, 398 F.3d at 211 ("We therefore conclude that as a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules . . . cannot now disown its agreed-to obligation to arbitrate *all* disputes, including the question of arbitrability."); *Terminix Int'l Co., LP v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332-33 (11th Cir. 2005) ("By incorporating

the AAA Rules . . . into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid.") (collecting cases).[3]  The arbitration panel's decision to exercise jurisdiction is in accord with this precedent.  *See* Panel Decision on Jurisdiction, ECF 20-1.

In sum, the Subcontract provides clearly and unmistakably that the parties agreed to arbitrate any dispute arising from the Subcontract and this includes disputes over arbitrability.

### 2. *The Subcontract's Arbitration Clause Remains Enforceable*

Notwithstanding the breadth of the Subcontract's arbitration clause, the plaintiff contends that "[t]his case is not arbitrable," Pl.'s Opp'n to Def.'s MTD/Stay ("Pl.'s Opp'n") at 2, ECF No. 12, for two reasons: first, the Subcontract "is no longer in existence and therefore no longer applicable, *id*. at 2-3; and second, the first arbitration award "was a final and complete arbitration" making the second arbitration "powerless to modify or make a new award on the same issues," *id*. at 3.  Neither reason posited by the plaintiff defeats the jurisdiction of the arbitrators to hear the defendant's claims presented in the second demand for arbitration.

First, the plaintiff asserts that termination of the Subcontract, due to its own material breach, has the result of terminating the force of the arbitration clause in the agreement.  Pl.'s Opp'n at 17 (arguing that the defendant's successful showing in the first arbitration that the plaintiff committed a material breach amounts to a "waiver" or "conce[ssion]" about the

---

[3] The parties rely on federal as well as Maryland state law without directly addressing the choice of law issue regarding which jurisdiction's law applies to interpret the parties' Subcontract. The Subcontract provides that "Federal law shall govern the interpretation or application" of the contract and "[w]here no Federal law is applicable, this Agreement shall be governed by the appropriate law of the State of Maryland." Subcontract ¶ 21.1. Even if Maryland law were applied, the result would not be different and the issue of arbitrability would go to the arbitrators. *See, e.g.*, *Wash. Homes, Inc. v. Interstate Land Dev. Co.*, 382 A.2d 555, 560 (Md. 1978) ("It is manifest that by their agreement and their effectuation of the arbitration, the parties 'provided for arbitration by the American Arbitration Association.' They thereby made the Commercial Arbitration Rules of the Association a part of their arbitration agreement."). As the plaintiff concedes, Maryland favors the enforcement of arbitration agreements where the parties agreed to arbitrate. *See* Pl.'s MTS Mem. at 10 n.3.

continued viability of the Subcontract and renders "the Subcontract . . . no longer in existence").

This assertion is completely at odds with well-established law that arbitration provisions remain

enforceable even after termination of an agreement, no matter the reason for the termination, so

long as the dispute subject to arbitration "involves facts and occurrences that arose before

expiration, where an action taken after expiration infringes a right that accrued or vested under

the agreement, or where, under normal principles of contract interpretation, the disputed

contractual right survives expiration of the remainder of the agreement." *Litton Fin. Printing*

*Div. v. NLRB*, 501 U.S. 190, 206 (1991); s*ee also Nolde Bros., Inc. v. Local No. 358, Bakery &*

*Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 251 (1977) (finding that "it could not

seriously be contended . . . that the expiration of the contract would terminate the parties'

contractual obligation to resolve such a dispute in an arbitral, rather than a judicial forum.")

(collecting cases); *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d at 133 (rejecting

argument that "the arbitration agreement no longer applied to [the plaintiffs'] claims once they

terminated" the agreement). Thus, "if a dispute arises under the contract here in question, it is

subject to arbitration even in the postcontract period." *Litton Fin. Printing Div*., 501 U.S. at 205.

The Supreme Court has explained that "there are strong reasons to conclude that the

parties did not intend their arbitration duties to terminate automatically with the contract." *Nolde*

*Bros.*, 430 U.S. at 253. For example, to hold otherwise "would preclude the entry of a post-

contract arbitration order even when the dispute arose during the life of the contract but

arbitration proceedings had not begun before termination" of the parties' agreement. *Id.* at 251.

Indeed, in this case it was *after* the plaintiff terminated the Subcontract through its material

breach that the defendant brought its first demand for arbitration and received an award that was

affirmed by both this Court and the D.C. Circuit. *See Priority One Servs., Inc.*, 825 F. Supp. 2d

at 46, *aff'd*, 502 F. App'x 4, 6 (D.C. Cir. 2013). If agreements to arbitrate ended upon termination of the agreement, a party could avoid agreed-upon arbitration of a dispute simply by terminating the agreement or waiting until the agreement ended to assert a claim. *See Zucker v. After Six, Inc*., 174 F. App'x 944, 947-948 (6th Cir. 2006) ("If the duty to arbitrate automatically terminated upon expiration of the contract, a party could avoid his contractual duty to arbitrate by simply waiting until the day after the contract expired to bring an action regarding a dispute that arose while the contract was in effect."); *United Steelworkers of Am., AFL-CIO v. Fort Pitt Steel Casting Div.-Conval-Penn, Inc.*, 635 F.2d 1071, 1075 (3d Cir. 1980) ("There is little reason to construe this contract to mean that the parties intended their contractual duty to submit grievances and claims arising under the contract to terminate immediately on the termination for the contract; the alternative remedy of a lawsuit is the very remedy the arbitration clause was designed to avoid.").

Moreover, the plaintiff points to no provision in the Subcontract that would eliminate the arbitration requirement on termination of the agreement. On the contrary, the arbitration provision covers any and all "claims arising out of, or relating to" the Subcontract, without regard to the status of the agreement or the timing of the claim, providing further clear evidence that the defendant's pending claims are subject to arbitration. *See Nolde Bros*., 430 U.S. at 255 ("[T]he parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship."); *Wolff v. Westwood Mgmt., LLC*, 558 F.3d 517, 519-521 (D.C. Cir. 2009) (rejecting party's argument that arbitration clause in terminated agreement was unenforceable where the agreement required arbitration of "any dispute" arising out of the agreement and

"survived the expiration of the [] Agreement and compels appellants to submit their claims to arbitration.").

The second ground on which the plaintiff resists the defendant's second arbitration demand is that this arbitration is barred due to "the finality of the prior arbitration award," Pl.'s Opp'n at 2, and the operation of the doctrines of collateral estoppel and res judicata, *id.*, at 7-15; Pl.'s MTS Mem. at 7-19; and waiver, Pl.'s MTS Mem. at 19-21.[4]  As support for this "finality" argument, the plaintiff cites language in the 2010 Arbitration Award stating that "[t]his decision is a final Award as to all claims . . . [a]ll claims not expressly granted herein are hereby, denied." Pl.'s Opp'n at 3 (quoting 2010 Arbitration Award) (emphasis omitted).  This argument is misplaced since it leap-frogs over the threshold issue of arbitrability to reach the merits of the defendant's claims in the second arbitration.   In other words, whether the first arbitration resolved all claims for all possible damages arising from the plaintiff's material breach of the Subcontract, as the plaintiff contends, or just those claims for damages that had accrued at the time of the 2010 Arbitration Award, as the defendant contends, is a merits issue.  The defendant's position is that, notwithstanding the cited language in the 2010 Arbitration Award, the first arbitration panel did not consider any claims for damages arising from option years 3 and 4 or thereafter, because the panel viewed those claims as too speculative to award at the time

---

[4] In support of its waiver argument, the plaintiff cites cases that do not address the threshold issue of arbitrability before the Court here and are, therefore, inapposite.  Moreover, to the extent the cases relied upon by the plaintiff hold that a party's litigation conduct may result in an affirmative waiver of the right to demand arbitration, these cases are distinguishable. *See* Pl.'s MTS Mem. at 19 (citing, *e.g.*, *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1996) ("[A] party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right.")); *id.* at 20 (citing, *e.g.*, *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. Ala. 1990) (plaintiff's "invocation of the litigation process" was "inconsistent[] with its arbitration right" and amounted to "waive[r of] its right to arbitrate")); Pl.'s Reply Supp. MTS at 14-15, ECF No. 13 (citing, *e.g.*, *Miller Brewing Co. v. Fort Worth Distr. Co.*, 781 F.2d 494 (5th Cir. 1986) (finding that a plaintiff waived right to arbitrate dispute by "actively participat[ing] in a lawsuit" that it filed before seeking arbitration against the defendant)).  In this case, the defendant has affirmatively sought arbitration on all of its claims arising under the Subcontract and is only asserting in the second arbitration proceedings those claims the first arbitration panel found had not yet accrued. The defendant has certainly not waived its right to arbitrate by actively participating in the instant litigation, where it presses the position that the Complaint should be dismissed and arbitration compelled.  *See* Def.'s MTD, ECF 10.

of the arbitration. *See* Demand for Arbitration ¶ 33 ("As for Option Years 3 (September 1, 2011-August 31, 2012) and 4 (September 1, 2012-August 31, 2013), the AAA found that Priority One's claims for those damages had not yet fully accrued because NIH had not yet exercised those option years.").[5]

Regardless of which parties' view is correct regarding whether only some or all claims arising under the Subcontract were considered and resolved with finality in the 2010 Arbitration Award, the plaintiff's arguments for why the defendant's second demand for arbitration should fail are *not* reasons for finding that the threshold question of arbitrability must be determined by the Court rather than the arbitrator. The merits of the plaintiff's argument regarding the scope of the 2010 Arbitration Award and, specifically, whether this award resolved the defendant's damages claims for option years 3 and 4 and thereafter, must be presented to and resolved by the ongoing second arbitration proceeding.

---

[5] The plaintiff cites several cases is support of its position that a party is barred from asserting a claim after having a full and fair opportunity for consideration of the claim in a prior arbitration proceeding, but those cases are inapposite since, again, none addressed the threshold issue of arbitrability that is before the Court here. Moreover, given the parties' dispute over the scope of the first arbitration panel's decision, the cases cited by the plaintiff appear to be distinguishable. For example, the plaintiff contends "the same scenario exists" in the instant case to bar the second arbitration as in *Hammerman v. Peacock*, 654 F. Supp. 71 (D.D.C .1987), where the court granted the defendants' summary judgment motion, finding that the federal suit was collaterally estopped by a prior arbitration decision adverse to the plaintiff. Pl.'s MTS Mem. at 11. Critical to the *Peacock* court's holding, however, was that the plaintiff had a full and fair opportunity to litigate the issues on which the plaintiff's federal claims depended and the arbitration had "effectively resolved the identical factual issues underlying [plaintiff]'s federal claims." 654 F. Supp. at 73. By contrast here, the defendant claims the first arbitration panel expressly declined to consider or resolve the claims now at issue in the second arbitration, so "the same scenario" does not appear to exist here. For the same reason, the plaintiff's reliance on *Greenblatt v. Drexel Burnham Lambert, Inc*., 763 F. 2d 1352 (11th Cir. 1985), is misplaced. Pl.'s MTS Mem. at 13. Although the *Greenblatt* court concluded that certain issues necessary for a prior arbitration panel decision were "binding" and entitled to collateral estoppel effect in the plaintiff's subsequent federal suit, other issues that "were not before the panel" were permitted to go forward in the civil suit. *Id*. at 1362. Likewise, *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140 (10th Cir. 1983), which the plaintiff cites as support for the proposition that a first arbitration award operates to bar a second demand for arbitration, *see* Pl.'s MTS Mem. at 8-9, is distinguishable. The *Grace* court concluded that a party's failure "to advance" certain claims in an arbitration so that those claims "were not addressed in the course of the first arbitration proceeding," constituted a waiver of those claims, making a second demand for arbitration properly stayed. 668 F.2d at 1153. This does not appear to be the situation in this case, where the defendant *did* assert certain claims in the first arbitration proceeding but the arbitration panel decided not to address them. Moreover, as the defendant notes, "[t]o the extent that [the plaintiff] claims *Grace* broadly stands for the proposition that the Court can rule on the merits of [the plaintiff's] affirmative defenses in determining arbitrability, that reading of *Grace* is foreclosed by the Supreme Court's decision in *AT&T* (decided four years after *Grace*), and the D. C. Circuit's decision in *Wolff* (decided 27 years after *Grace*)." Def.'s Opp'n at 8.

Likewise, the plaintiff's related contentions that the defendant's claims in the second arbitration demand are barred by collateral estoppel, res judicata and waiver are not properly considered here. Those contentions are affirmative defenses directed to the merits of the defendant's claims under consideration in the second arbitration proceeding. To consider those defenses here would run afoul of the Supreme Court's direction that "in deciding whether the parties have agreed to submit a particular grievance to arbitration," courts should decline to address affirmative defenses because doing so would constitute a "rul[ing] on the potential merits of the underlying claims." *AT&T Techs., Inc.*, 475 U.S. at 649; *see also Howsam*, 537 U.S. at 84-85 (refusing to consider defenses to arbitrability such as "time limits, notice, laches [or] estoppel"); *Wolff*, 558 F.3d at 521 (finding "[t]he remainder of appellants' arguments can be dismissed in short order" including the appellants' "unclean hands argument" because when deciding whether the parties agreed to submit a grievance to arbitration, the court should not rule on the merits of the claim). [6]

Despite the plaintiff's invitation to address the merits of the defendant's claims presented in its demand for arbitration, the only issue before the Court at this time is the threshold question of "who has the primary power to decide arbitrability." *First Options of Chicago*, 514 U.S. at 943. Having decided that question in the defendant's favor, any evaluation of the merits of the plaintiff's affirmative defenses as to why the defendant should not prevail in the second arbitration are matters that the Court leaves to the arbitrators. *See Toledano v. O'Connor*, 501 F.

---

[6] The plaintiff cites *Kelly v. Merrill Lynch, Pierce, Fenner & Smith*, 985 F.2d 1067 (11th Cir. 1993), for the proposition that "it is for the court and not for the arbitrator to determine whether claims are *res judicata* as a result of a confirmed arbitration award," Pl.'s MTS Mem. at 14; *id.* at 18, but this proposition side-steps the key issue here of whether the parties' agreed to let arbitrators decide arbitrability. In any event, as the defendant points out, *Kelly* is no longer good law. Def.'s Reply Supp. Mot. Dismiss at 3, ECF No. 14. Indeed, in *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004), the Eleventh Circuit concluded that the *Kelly* court "erred in considering the res judicata issue" because the Supreme Court in *Howsam* stated "that, unless an arbitration agreement otherwise stipulates, a court is empowered only to determine the 'substantive' issue of arbitrability—that is, whether a particular dispute falls within the scope of an arbitration clause—and the necessary threshold question of whether that clause is enforceable." *Id.* at 1109.

Supp. 2d 127, 146 (D.D.C. 2007) (rejecting invitation to take "a quick peek at the merits" in order to determine if the claims are arbitrable because to do so would exceed this Court's authority).

### B. The Complaint Fails to State a Claim

As the arbitrator must determine arbitrability of the defendant's claims asserted in the second arbitration proceeding, the only matter left for the Court is whether the suit should be dismissed or stayed pending the outcome of the arbitration. While the D.C. Circuit has not addressed this issue, other Circuit courts have reached divergent views regarding the repercussions for a pending civil suit of a finding that arbitration of the underlying dispute is required. *See Braxton v. O'Charley's Rest. Props*, LLC, 5:13-CV-00130-TBR, 2014 WL 585324, at *5 (W.D. Ky. Feb. 14, 2014) (discussing circuit split); *see also* Richard A. Bales & Melanie A. Goff, *An Analysis of an Order to Compel Arbitration: To Dismiss or Stay?*, 115 PENN ST. L. REV. 539, 547 (2011); Angelina M. Petti, Note, *Judicial Enforcement of Arbitration Agreements: The Stay-Dismissal Dichotomy of FAA Section 3*, 34 HOFSTRA L. REV. 565, 575 (2005).

The Third, Seventh, and Tenth Circuits have concluded that Section 3 of the FAA requires that the suit be stayed until the conclusion of the arbitration. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n. 7 (7th Cir. 2005) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to *stay* the proceedings pending arbitration rather than to dismiss outright."); *Lloyd v. HOVENSA*, LLC, 369 F.3d 263 (3d Cir. 2004); *Adair Bus. Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953 (10th Cir. 1994). Section 3 provides that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is

not in default in proceeding with such arbitration."  FAA, 9 U.S.C. § 3.  A primary rationale for these decisions is that dismissing the case may subject the party moving to compel arbitration to an unnecessary appeal of the dismissal while the arbitration is proceeding.  *See, e.g.*, *Lloyd v. HOVENSA, LLC.*, 369 F.3d at 270 ("The effect of that stay is twofold: it relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate.  Under § 16 of the FAA, 9 U.S.C. § 16, whenever a stay is entered under § 3, the party resisting arbitration is expressly denied the right to an immediate appeal.").  This rationale is of limited import here, where the defendant has moved for dismissal of the Complaint and thereby assumed the risk of a possible appeal.  *See generally* Def's MTD Mem., ECF 10.

In contrast to the Third, Seventh, and Tenth Circuits, the majority of Circuit courts to consider this issue have concluded that Section 3 of the FAA does not preclude dismissal of a lawsuit when all of the claims asserted will be submitted to the arbitrator.  *See, e.g.*, *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 372 (1st Cir. 2011) ("Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable.") (quotations and citations omitted); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001) (sanctioning dismissal "when all of the issues presented . . . are arbirable"); *Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413 (5th Cir. 2014) (affirming dismissal rather than stay under Fifth Circuit precedent); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (stating that dismissal, as opposed to a stay pending arbitration, is proper "when *all* of the issues raised in the district court must be submitted to

arbitration"); *Ozormoor v. T–Mobile USA, Inc.*, 354 Fed. App'x. 972, 975 (6th Cir. 2009)

("[Plaintiff] challenges the dismissal of his suit, asserting that 9 U.S.C. § 3 requires district

courts to stay suits pending arbitration rather than dismiss them. We have already rejected that

argument."); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014)

("We have held that, notwithstanding the language of § 3, a district court may either stay the

action or dismiss it outright when, as here, the court determines that all of the claims raised in the

action are subject to arbitration," citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th

Cir. 1988)).

Moreover, while the D.C. Circuit has not explicitly opined on this issue, it has upheld a

finding that Section 3 of the FAA does not preclude dismissal of an action "in the proper

circumstances," including where "all issues raised in the complaint must be submitted to

arbitration." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, CIV.A. 05-151(GK), 2006 WL

1793295, at * 3 (D.D.C. June 28, 2006) *aff'd*, 531 F.3d 863 (D.C. Cir. 2008) (internal quotations

omitted); *see also Cole v. Burns Int'l Sec. Servs.*, 1996 U.S. Dist. LEXIS 22541, at *11-12

(D.D.C. Jan. 31, 1996), *aff'd*, 105 F.3d 1465 (D.C. Cir. 1997).

This Court will follow the majority rule regarding the propriety of dismissing a case

where all of the claims are subject to resolution by the arbitrator. *See Haire*, 925 F. Supp. 2d at

134 (compelling arbitration and dismissing the case after finding "that the parties intended the

issue of arbitrability to be resolved by the arbitrator" and all other claims likewise belonged to

the arbitrator); *Avue*, 2006 WL 1147662, at *7 ("[The plaintiff's] motion to stay arbitration

proceedings will be denied and, since that is the entirety of the relief sought in this action, the

case will be dismissed."). *But see White v. Four Seasons Hotels & Resorts*, CV 13-1399 (JEB),

2013 WL 6171595, at *7 (D.D.C. Nov. 26, 2013) (finding that FAA's section 3 and the D.C. arbitration statute, D.C. Code § 16-4407(f), direct the court to stay rather than dismiss the case).

In the instant matter, the plaintiff seeks a declaratory judgment that the defendant's claims are not arbitrable because the Subcontract no long exists and the claims are barred by the finality of 2010 Arbitration Award as to "*all* claims." *See* Compl. ¶ 23. In light of the conclusions set out above, however, that the arbitration requirement survives termination of the Subcontract, which vests authority with the arbitrators, not this Court, to determine arbitrability, no issues are left for this Court to resolve. In these circumstances, dismissal is appropriate. *See, e.g.*, *Aliron*, 2006 WL 1793295, at *3 ("[A]ll of Plaintiff's claims must be submitted to arbitration, since the arbitration clause applies to *any* dispute that may arise between the parties. Since there is no further action to be taken by this Court, it is appropriate to dismiss this case in its entirety."); *see also* Richard A. Bales & Melanie A. Goff, *An Analysis of an Order to Compel Arbitration: To Dismiss or Stay?*, 115 PENN ST. L. REV. at 542 ("If all issues between the parties fall within the arbitration provision, the court should, in its discretion, dismiss the action and leave the parties to the decision of the arbitrator, pursuant to the parties' contractual agreement.").[7]

---

[7] Both parties in this case have moved for sanctions in the form of attorneys' fees for having to litigate these issues. The court has the "inherent authority to order sanctions, including attorney's fees, if a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Priority One Servs., Inc. v. W & T Travel Servs.*, LLC, 502 F. App'x at 6 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "But in order to do so, the court must 'make a specific finding,' by clear and convincing evidence, that a party so acted." *Id.* (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). Statutory authority for an award of attorneys' fees also exists where a party "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Although the plaintiff is barking up the wrong tree for relief in this case, since the arbitration panel must decide whether the defendant's claim is arbitrable, the Court is not persuaded that the Complaint was filed in bad faith or to do harm to the defendant in the process. In short, no clear and convincing evidence has been shown that either party is proceeding in bad faith or that sanctions are warranted against either party. Thus, both parties' requests for sanctions to be imposed on the other party are denied.

**IV.    CONCLUSION**

For the foregoing reasons, the plaintiff's motion to stay arbitration is denied and the

defendant's motion to dismiss is granted.

An Order consistent with this Memorandum Opinion will be contemporaneously entered.


Date: September 25, 2014


_____
BERYL A. HOWELL
United States District Judge